PAUL MILES, APPELLANT, *v.* HIRAM THORNE, RESPONDENT.

STATUTE OF LIMITATIONS, ON DEMURRER. — On demurrer to a complaint, founded upon the Statute of Limitations, if the complaint fails to show whether the contract in suit was verbal or in writing, it will be presumed to have been in writing for all the purposes of the demurrer.

IDEM.—On appeal, all presumptions are in favor of the judgment; and if a demurrer to a complaint, founded upon the Statute of Limitations, has been sustained, and the transcript fails to show when the action was commenced, it will be presumed that it was not commenced until after the statute had run.

STATUTE OF LIMITATIONS—EXPRESS TRUST.—The Statute of Limitations does not begin to run in the case of an express trust, until the trustee, with the knowledge of the *cestui que trust*, has disavowed and repudiated the trust.

EXPRESS TRUST.—T. agreed with M. that if they could obtain a road franchise from the Legislature in T.'s name, and M. would draw a bill to that effect, and would construct half the road, he constructing the other half, they should be equal owners and divide the tolls. M. drew the bill, which became a law, and constructed his half of the road; then, by express agreement, T. took possession of the road and collected the tolls on mutual account. *Held*, to be an express trust. ·

PUBLIC POLICY. — M., for a consideration, promised to draft a bill for a franchise in favor of T., and to place it in the hands of some member of the Legislature, to be introduced in that body, but did not promise to work for its passage, either secretly or openly. *Held*, that the promise was not *contra bonos mores*.

IDEM.—A person may, without any violation of public policy, for hire, work for the passage of bills by the Legislature, provided he does not conceal his interest in the matter, but lets it be known and understood by the members whose judgment he undertakes to influence.

APPEAL from the District Court of the Third District, Alameda County.

The plaintiff appealed.

The case and points are stated in the opinion.

*E. L. B. Brooks,* for Appellant.

*Clarke & Carpentier,* for Respondent.

SANDERSON, J., delivered the opinion of the Court:

This is an action to obtain a conveyance of an undivided half interest in a road franchise, and an account and division of the tolls, all of which, as charged, have been collected and received by the defendant.

It appears by the complaint, that, in 1854–5, the defendant, without any grant from the Legislature, had opened and

constructed a road, or highway, situated in the Counties of
Contra Costa and Alameda, and known as "Thorne's Road."
That, at the commencement of the year 1862, the road was
out of repair and unfit for traveling, and the defendant was
destitute of means to repair it. That the defendant was
minded to obtain for himself, and such other persons as he
might associate with him, a grant from the Legislature,
authorizing him and them to reconstruct and repair the
road, and to collect tolls thereon. That he represented his
inability to reconstruct and repair the road without assist-
ance, if such grant should be obtained, to the plaintiff, and
requested him to assist in the reconstruction and repair of
said road in the event a franchise should be obtained from
the Legislature. That thereupon, in the month of January,
1862, an agreement was made between them, to the effect
that the plaintiff should prepare a bill providing for a grant
of the franchise to the defendant and such other persons as
he might associate with him, and present it to some member
of the Legislature, to be by him introduced before a branch of
that body, to the end that it might be acted upon and passed
into a law. That, if said bill passed, the plaintiff should
reconstruct that portion of the road which was situated in
in Alameda County, and the defendant should reconstruct
that portion of the road which was situated in Contra Costa
County, and each should, thereupon, become equally inter-
ested in the franchise, and share equally in the fruits thereof.
That the plaintiff, thereupon, caused a bill to be drawn and
presented to the Legislature, which became a grant of the
franchise in question—on the 14th of April, 1862—under
the following title : "An Act to authorize Hiram Thorne and
others to reconstruct and make a wagon road in the Counties
of Contra Costa and Alameda." (Stats. 1862, p. 40.) That,
after the making of said grant, they again renewed their
agreement in relation to the reconstruction of the road and
their equal interests therein. That, thereupon, the plain-
tiff, at his own cost, reconstructed that portion of the road
which was situated in Alameda County, and the defendant
did the same as to that portion which was situated in Contra
Costa County. That the road was completed and a toll-gate

erected in the latter part of the year 1862, and the rates of toll established by the Board of Supervisors of Contra Costa County, in accordance with the conditions of the franchise. That, thereupon, by mutual consent, and on mutual account, the defendant took charge of the road, and has remained in charge from that time to the present, collecting and receiving the tolls, without accounting with the plaintiff. That, on the 15th of November, 1866, the plaintiff demanded an account and settlement, and a conveyance of a half interest in the franchise, both of which were refused by the defendant.

To this complaint the defendant demurred, upon the grounds : First—Because the cause of action is barred by Sections 17 and 19 of the Statute of Limitations ; Second— Because the contract was *contra bonos mores,* and therefore void.

The Court below sustained the demurrer upon the first ground.

We find nothing in the complaint which shows whether the contract was verbal or in writing. For the purposes of the demurrer, it must be assumed, therefore, that the contract was in writing, and hence the defendant cannot rely upon the clause of the 17th Section of the Statute of Limitations in relation to actions upon verbal contracts. The clause of the 17th Section in relation to actions upon written contracts, or the 19th Section, which relates to actions for relief not previously provided for, are the only provisions of the statute upon which the defendant can rely.

The record with which we have been furnished, fails to show when the action was commenced. The complaint was amended, and the amended complaint, only, has been brought up. That was filed on the 6th of March, 1867. There is neither memorandum, certificate nor stipulation showing when the original complaint was filed. All presumptions are in favor of the judgment below, and we must, therefore, presume that the action was not commenced until after the expiration of four years from the time at which, under the contract, the plaintiff became entitled to a conveyance. If

the fact be otherwise, the appellant should have caused it to so appear upon the record.

The argument of the plaintiff is, that, by reason of the contract between them, the defendant took the franchise, as to an equal and undivided half, in trust for him, and entered into its possession and enjoyment as his trustee, and that the statute could not, therefore, run against his right of action for a conveyance until the defendant had repudiated the trust and claimed to hold adversely, with notice to him; and that, so far as the complaint shows, the defendant did not repudiate the trust until the 15th of November, 1866, and hence the statute commenced to run from that date, and not from the point of time at which, under the terms of the contract, he was entitled to a conveyance.

Whether this view be sound, depends upon the character of the trust. The doctrine contended for undoubtedly applies to the case of a direct or express trust. In such a case the statute does not run, as between *cestui que trust* and *trustee*, so long as the trust continues—the reason being that the possession of the trustee is the possession of his beneficiary, and hence his possession is not adverse to the equitable title of the latter, but consistent with it; the possession of the trustee of an express trust being of the same legal complexion as that of a lessee of land, in whose favor the statute does not run so long as his relation as tenant continues. In relation to certain classes of resulting or implied trusts, the rule is otherwise. (Angell on Lim. Chap. XXXV.) But the operation of the statute upon resulting or implied trusts is not involved in this case, and we therefore express no opinion upon that branch of the general subject.

The complaint shows that there was an express agreement from the outset that the plaintiff and the defendant should be equal owners of the franchise, when it should be obtained and the road should be reconstructed, and that, after the franchise was obtained and the road reconstructed, this agreement was renewed, and it was further expressly agreed that the defendant should enter into possession of the road, and hold the same, and collect the tolls for himself and the plaintiff. By this agreement the defendant expressly declared

himself to be the trustee of the plaintiff in respect to his interest in the franchise and tolls ; or, in other words, he became the trustee of an express trust, as to which the Statute of Limitations would not begin to run until he should, to the knowledge of the plaintiff, disavow and repudiate the trust, which he did not do, so far as appears upon the face of the complaint, until the 15th of November, 1866, at which time the plaintiff demanded a deed and an account of the tolls.

Whether the trust is within the Statute of Frauds, and, therefore, void, unless in writing, is a question which cannot be made upon this demurrer ; for, as already suggested, it does not appear upon the face of the complaint that the agreement was not in writing.   Upon that question, therefore, we express no opinion.

We find nothing in the contract, as alleged in the complaint, which sustains the point made by the defendant, that it is against public policy, and, therefore, illegal and void. The point is founded upon the idea that by the agreement the plaintiff was to use his influence to obtain from the Legislature a grant of the franchise in question.   The complaint furnishes no ground for such a charge.   The plaintiff was to draft a bill for the franchise and place it in the hands of some member of the Legislature, to be by him introduced to that body ; but there was no promise or· undertaking on his part to labor, either secretly or openly, with the members of the Legislature to secure its passage.   Yet, having by virtue of the agreement, an equal interest with the defendant in obtaining the franchise, he had a legal right, equally with him, to urge its passage by all honorable means, provided he did not conceal, but openly acknowledged his interest in the measure.   Even had he agreed to act as the advocate of the defendant, the agreement would not have been illegal, if it was understood that he was to act openly as such, and did so act when the time came.   The rule upon this subject has been declared by the Supreme Court of the United States to be as follows :   "All persons whose interest may, in any way, be affected by any public or private act of the Legislature, have an undoubted right to urge their claims and arguments,

either in person or by counsel *professing to act for them* before legislative committees, as well as in Courts of justice. But where persons act as counsel or agents, or in any representative capacity, it is due to those before whom they plead or solicit that they should honestly appear in their true characters, so that their arguments and representations, openly and candidly made, may receive their just weight and consideration. A hired advocate or agent, assuming to act in a different character, is practicing deceit on the Legislature. Advice or information flowing from the unbiased judgment of disinterested persons will naturally be received with more confidence and less scrupulously examined, than where the recommendations are known to be the result of pecuniary interest, or the arguments prompted, and pressed by a hope of a large contingent reward, and the agent 'stimulated to active partizanship by the strong lure of high profit.' Any attempts to deceive persons entrusted with the high functions of legislation, by secret combinations, or to create or bring into operation undue influences of any kind, have all the injurious effects of a direct fraud on the public·" (*Marshall* v. *Baltimore and Ohio R. R. Co.* 16 How. 334.) Subjected to this test, we find nothing in the agreement between the plaintiff and defendant, as declared on, which is in any respect inconsistent with the soundest public policy.

Judgment reversed, and the defendant allowed to answer within twenty days after the notice of the filing of the remittitur in the Court below.

Mr. Justice RHODES expressed no opinion.