[No. 12566.   In Bank. — September 26, 1891.]

JUAN M. LUCO, Appellant, v. JUAN DE TORO, Respondent.

91 405
121 40
91 405
129 49
91 405
135 260
91 405
140 149
91 405
144 768

Express Trust — Employment of Attorney to Procure Patent — Undivided Interest — Equitable Estate. — A contract between the equitable owner of an interest in a tract of land and an attorney at law, by the terms of which the attorney agreed to procure a patent to the land for such equitable owner, in consideration of which the latter is to convey to the attorney an undivided interest in the land patented, is a valid contract, and creates an express trust in the land, establishing the relation of trustee and cestui que trust between the patentee and the attorney, and upon full performance of the contract by the attorney, vests in him an indefeasible equitable estate of an undivided interest in the land, and the right to a conveyance of such interest from the patentee.

Id. — Performance of Contract by Attorney — Findings. — Upon an issue as to the performance of such contract on the part of the attorney, the finding should be clear and unequivocal, and should conform to the evidence.

Id. — Employment of Additional Attorney — Substantial Performance of Contract. — The fact that the owner of the land employed another attorney to assist in procuring the patent, and that such attorney rendered valuable services in that connection at the instance of the owner, does not affect or defeat the rights of the first attorney, or of his assignee under the contract, after substantial performance on his part of all that was necessary to be done in order that the patent might issue for the quantity of land finally granted.

Id. — Statute of Limitations — Open and Unequivocal Repudiation of Trust — Notice to Beneficiary. — The statute of limitations begins to

run against the trust established by such contract only from the time it is openly disavowed by the trustee insisting upon an adverse right and interest which is clearly and unequivocally made known to the *cestui que trust*.

ID. — REFUSAL OF EXECUTOR TO CONVEY — NOTICE OF DISAVOWAL OF TRUST RELATIONS — INSUFFICIENT FINDINGS. — Findings that the executor of the patentee refused upon demand to convey to the assignee of the attorney as tenant in common the interest due the attorney under the terms of the contract, without stating any reason for the refusal, and that the patentee in his lifetime, and his representative after his death, repudiated any obligation under the contract to the attorney or his assignee, and claimed to have and hold the whole interest to which the patentee held the legal title when he died, adversely to the attorney or his assignee, free from any claim on the part of either under the contract, do not sufficiently show notice to the beneficiary of a disavowal of the trust relations created by the contract. There may be a disavowal and repudiation of the trust without knowledge or notice of the same being brought home to the beneficiary.

ID. — CONVEYANCE BY EXECUTOR OF PATENTEE — ORDER OF PROBATE COURT — EFFECT OF REFUSAL. — An executor of a patentee is under no obligation and has no authority to make a conveyance to one for whom the patentee was a trustee, without an order of the probate court; and the mere fact of refusal of the executor to make such conveyance upon demand, without denying the existence of the trust relation, or informing the *cestui que trust* of such denial, does not constitute a repudiation of the trust relation.

ID. — NOTICE TO ASSIGNEE OF BENEFICIARY. — After the contract creating the trust relation has been assigned by the beneficiary, to the knowledge of the trustee, no repudiation of the trust by the trustee can affect the rights of the assignee, unless the latter has notice thereof.

ID. — CREATION OF EXPRESS TRUST — INTENTION OF PARTIES. — It is not necessary in the creation of an express trust to use any particular form of words. The relation of trustee and *cestui que trust* is established, and an express trust created, if the language used in the instrument creating the trust expresses the intention that one party shall hold the legal title and the other shall have the beneficial interest.

ID. — ESTATE OF VENDEE AFTER PERFORMANCE — TENANCY IN COMMON — OUSTER — PRESUMPTION AS TO POSSESSION — STATUTE OF LIMITATIONS. — The relations existing between vendor and vendee after full performance by the vendee, and the vesting in him of an indefeasible estate in equity, are governed by the same rules as those which exist between ordinary tenants in common, so far as repudiation of title and ouster are concerned. The possession of the vendor is presumed to be the possession of his *cestui que trust*, the vendee, and the statute cannot run against one's own possession, while there is no ouster.

ID. — ACTUAL POSSESSION OF BENEFICIARY — IMPLIED TRUST. — In the case of an express trust, although the actual possession of the vendor or nonpossession of the vendee is a circumstance to be considered in determining whether there has been a repudiation of the trust and notice thereof to the vendee, yet such possession is not conclusive thereof, and the mere fact that the vendee is out of possession will not set the statute of limita-

tions running.  It is only in cases of implied trusts that actual possession by the beneficiary is necessary to prevent the running of the statute.

STATUTE OF LIMITATIONS — FINDINGS. — A finding that the cause of action is barred by certain sections of the statute of limitations, by reference to their number as pleaded in the answer, is a finding of an ultimate fact, and not of a conclusion of law.

PARTITION — EQUITABLE TITLE — STATUTE OF LIMITATIONS — SPECIFIC PERFORMANCE. — In an action of partition, the parties may assert any title that they may have, legal or equitable; and a full equitable title is a perfect title, which may be enforced in such an action, although limitation may have run against an action for specific performance of the contract to compel a conveyance.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Oliver P. Evans, E. W. McKinstry, I. N. Thorne,* and *H. S. Mulford,* for Appellant.

No form of words is requisite to create an express trust.  If the language used expresses the intention that one party shall hold the legal title, and the other shall have the beneficial interest, then it is an express trust, and the relation of trustee and *cestui que trust* is established. (2 Story's Eq. Jur., sec. 1212; 2 Lewin on Trusts and Trustees, 877.)  A defeasible title in equity vested in Hartman upon the execution of the agreement with Olvera, which became indefeasible upon the performance by Hartman and his assignee Luco of the agreement and stipulations contained in the agreement. (*Miles* v. *Thorne,* 38 Cal. 338; 99 Am. Dec. 384; *Seymour* v. *Freer,* 8 Wall. 202, 218; *Lewis* v. *Hawkins,* 23 Wall. 119, 126; Pomeroy's Eq. Jur., secs. 105, 368, 372, 1010, 1161, 1163, 1164, and note to sec. 1260, vol. 3, p. 272; Perry on Trusts, secs. 82, 83; *Fisher* v. *Fields,* 10 Johns. 495.  See also *Taylor* v. *Holmes,* 14 Fed. Rep. 508; *Love* v. *Watkins,* 40 Cal. 547; 6 Am. Rep. 624; *Hoffman* v. *Vallejo,* 45 Cal. 572.)  The statute of limitations has no application.  It does not begin to run until the trustee repudiates the trust by clear and unequivocal acts and words, and claims thenceforth to hold the estate as his own, not subject to any trust, and

such repudiation and claim are brought to the knowledge of the *cestui que trust.* (*Hearst* v. *Pujol*, 44 Cal. 235; *Janes* v. *Throckmorton*, 57 Cal. 388; *Oliver* v. *Piatt*, 3 How. 411; *Speidel* v. *Henrici*, 120 U. S. 377; *Seymour* v. *Freer*, 8 Wall. 202; *Lewis* v. *Hawkins*, 23 Wall. 119, 126; 1 Story's Eq. Jur., 789; 2 Story's Eq. Jur., 1212; 1 Sugden on Vendors and Purchasers, 175; *Wright* v. *Ross*, 36 Cal. 433; *Miles* v. *Thorne*, 38 Cal. 338, 339; 99 Am. Dec. 384; *Love* v. *Watkins*, 40 Cal. 570, 571; 6 Am. Rep. 624; *Bennett* v. *Morrison*, 120 Pa. St. 390; 6 Am. St. Rep. 711; *Miller* v. *Myles*, 46 Cal. 539. See also *McCauley* v. *Harvey*, 49 Cal. 497, 506; Perry on Trusts, secs. 863, 864; *Bostwick* v. *Dickson*, 65 Wis. 593; *Ord* v. *De la Guerra*, 18 Cal. 75; 3 Parsons on Contracts, 6th ed., p. 364, note *t.*) Where, as in the present case, the vendee has fully performed the contract on his part, his right cannot be barred by any provision of the statute of limitations. In such case the vendor holds the naked legal title subject to an express trust. (*Lewis* v. *Hawkins*, 23 Wall. 125; 3 Parsons on Contracts, 6th ed., 364, note *t;* *Preston* v. *Walsh*, 10 Fed. Rep. 325; *Bostwick* v. *Dickson*, 65 Wis. 593; *Rheil* v. *Likowski*, 33 Kan. 515; *Thomas* v. *Merry*, 113 Ind. 83; Pomeroy's Eq. Jur., secs. 147, 155, note, 1010, note, 1161.) The services to be performed by Hartman under his contract with Olvera were of such a nature as to render the contract in question analogous to a conditional deed. The law is well established that when a grantor prevents or excuses the performance of the condition by his own act, or performs the condition himself, there can be no forfeiture, and the estate becomes absolute in the grantee. (*Houghton* v. *Steele*, 58 Cal. 421, 424; Bac. Abr., tit. Conditions, o, 2; *Williams* v. *Bank of United States*, 2 Pet. 102; *Marshall* v. *Craig*, 1 Bibb, 380; *Majors* v. *Hickman*, 2 Bibb, 217; *United States* v. *Peck*, 102 U. S. 65.) The present action being an action for partition, either of the parties may assert any title he may have, legal or equitable. (*Goodale* v. *Fifteenth Dist. Court*, 56 Cal. 26; *McCauley* v. *Harvey*, 49 Cal. 497; *Morenhout* v. *Higuera*,

32 Cal. 290; *Oakland* v. *Carpentier*, 13 Cal. 540.)  Luco's equitable interests in the subject-matter could as well be put in issue, tried, and determined here as in any other action, as the court had jurisdiction of the action. (Story's Eq. Jur., sec. 656; *Coxe* v. *Smith*, 4 Johns. Ch. 276.)  A party who seeks relief at the hands of the courts may obtain both legal and equitable relief in the same action or proceeding, if, upon the facts of his case, he is entitled to both.  Actions for partition of land constitute no exception to this rule.  If, between the parties to an action for partition, dispute exists as to their rights or interests in any respect, such disputes may be litigated and determined in such action. (*Morenhout* v. *Higuera*, 32 Cal. 294; *De Uprey* v. *De Uprey*, 27 Cal. 336; 87 Am. Dec. 81; *Bollo* v. *Navarro*, 33 Cal. 459; *Gates* v. *Salmon*, 35 Cal. 595; 95 Am. Dec. 139; *Martin* v. *Walker*, 58 Cal. 580; *Emeric* v. *Alvarado*, 64 Cal. 529; *Ortman* v. *Dixon*, 13 Cal. 34.)

*Henry M. Smith, Harry L. Titus,* and *George H. Smith,* for Respondent.

The plaintiff's cause of action accrued on or before the first day of September, 1876,— the date of the issue of the patent.  The plaintiff had then, if ever, fully performed the contract on his part, and could have maintained an action for specific performance, without demand for a deed, or refusal on the part of the vendor. (*Gray* v. *Dougherty*, 25 Cal. 282; *Jones* v. *City of Petaluma*, 36 Cal. 233; *Love* v. *Watkins*, 40 Cal. 547; 6 Am. Rep. 624.) The statute of limitations applies to suits in equity as well as actions of law. (*Grattan* v. *Wiggins*, 23 Cal. 34; *Piller* v. *S. P. R. R. Co.*, 52 Cal. 44; *Lord* v. *Morris*, 18 Cal. 486.)  And the rule has been repeatedly applied to cases for specific performance. (*Love* v. *Watkins*, 40 Cal. 564; 6 Am. Rep. 624; *Lord* v. *Morris*, 18 Cal. 486, 487; *Pearis* v. *Covillaud*, 6 Cal. 617; *Henderson* v. *Hicks*, 58 Cal. 372; *Lowell* v. *Kier*, 50 Cal. 647.)  The plaintiff does not occupy the position of a vendee in possession, under his contract, with the consent, express or presumptive, of his vendor,

and is entitled to no comfort or relief from the doctrine laid down in the case of *Love* v. *Watkins,* or in the cases which it follows, or by which it is followed. *(Love* v. *Watkins,* 40 Cal. 547; 6 Am. Rep. 624; *Morrison* v. *Wilson,* 13 Cal. 498; *Willis* v. *Wozencraft,* 22 Cal. 638; *Bodley* v. *Ferguson,* 30 Cal. 516; *Gerdes* v. *Moody,* 41 Cal. 335; *Talbert* v. *Singleton,* 42 Cal. 391; *Brennan* v. *Ford,* 46 Cal. 14; *Wormouth* v. *Johnson,* 58 Cal. 621; *Davis* v. *Baugh,* 59 Cal. 568; *C. P. R. R. Co.* v. *Mudd,* 59 Cal. 590; *Whittier* v. *Stege,* 61 Cal. 238; *Hicks* v. *Lovell,* 64 Cal. 14; 49 Am. Rep. 679; *Day* v. *Cohn,* 65 Cal. 508; *Arguello* v. *Bours,* 67 Cal. 447; *Gates* v. *McLean,* 70 Cal. 42; *Southern Pacific R. R. Co.* v. *Terry,* 70 Cal. 484; *Gilbert* v. *Sleeper,* 71 Cal. 290.) In every one of the cases cited, the vendee was in possession and had entered into or remained in possession with the consent of his vendor, and no case can be found, at least in this state, where it has been held that the statute of limitations does not run against the vendee out of possession by reason of the so-called trust relation existing between him and his vendor.

PATERSON, J. — Appellant and several other plaintiffs brought this action against respondent and several other defendants for partition of a tract of land known as the rancho mission (or ex-mission) of San Diego, a patent to which issued from the United States of America to Santiago Arguello, or his legal representatives, on the first day of September, 1876. The original complaint, which was filed August 8, 1882, contained all the allegations required by chapter 4, part 2, title 10, of the Code of Civil Procedure. On December 13, 1886 (after the cause was reversed on the former appeal, 70 Cal. 339), plaintiffs, by leave of the court, filed an amendment to the complaint, inserting between paragraphs 21 and 22 thereof the following: " Plaintiffs allege that the plaintiff Juan M. Luco owns an undivided equitable interest in the said rancho of ex-mission of San Diego by reason that on and before the third day of February, 1869, said

Agustin Olvera was the owner and in possession of an undivided share or interest of more than one half of said rancho, and that on said day the said Agustin Olvera made and entered into a contract, in writing, with the said Isaac Hartman, now deceased, in the words and figures, to wit:—

" 'This agreement, made and entered into this third day of February, A. D. 1869, between Isaac Hartman, party of the first part, and Agustin Olvera, party of the second part, witnesseth as follows, to wit:—

" ' That the party of the first part, as attorney and counselor at law, undertakes and agrees with the party of the second part to procure a patent from the United States for the lands of the ex-mission of San Diego, of San Diego County, bounded and described as follows, to wit [giving the specific boundaries of said rancho].

" 'In consideration whereof, the party of the second part agrees to pay the said party of the first part as follows: The sum of one thousand dollars for personal expenses incurred by the party of the first part in said business, but not to exceed in any case said sum of one thousand dollars.

" ' In addition to which the party of the second part is also to pay the costs of proceedings to obtain said patent, and to convey to the party of the first part an undivided interest in the lands to be patented of said ex-mission, as follows: If the patent issues for five leagues, one half league; if for six leagues, one league; if for seven leagues, one league; if for eight leagues, one and one half leagues; if for nine leagues, one and one half leagues; if for ten leagues, one and one half leagues; if for eleven leagues, two leagues; and whatever amount is patented over and above eleven leagues is to be equally divided between the parties of the first and second parts; that is to say, that the party of the first part is to be entitled to the one undivided one half of the excess over and above eleven leagues, and the four leagues of land in the immediate vicinity of said ex-mission are to remain exclusively for the parties of the second part.

"' In testimony whereof, the parties have hereunto, and to another instrument of same tenor and date, set their hands and seals the date first above written.

"' Isaac Hartman.
[Seal.]                "' Agustin Olvera.

"' Acknowledged in Los Angeles County, February 3, 1869, before     James F. Lander, Notary Public.

"' Filed for record in the recorder's office of San Diego County, February 20, 1871.'

" That the said contract was fully performed by the said Hartman on his part, so that on the first day of September, 1876, he procured to be issued a patent from the United States for the rancho of the said ex-mission of San Diego, as described in said contract, and to the extent of 58,875.38 acres; that theretofore, to wit, on or about the twenty-third day of March, 1869, by his deed of that date, said Isaac Hartman, for a good and valuable consideration, conveyed all his right, title, and interest in said rancho, acquired under and by virtue of the aforesaid contract made by said Olvera with said Hartman, and of said conveyance from said Hartman to said Luco, he, the said Luco, became the owner, and was and is entitled to an interest or share, of —— acres, undivided, in said rancho, and that he has now, and has had since the date of said conveyance, the just and equitable title thereto; that said Luco, as tenant in common, for more than five years prior to the commencement of this suit, had been in possession of said premises, and has paid his proportionate share of all the costs and expenses attending the proceedings taken herein for the partition of said rancho; that at the time of the death of the said Agustin Olvera, as aforesaid, he held the legal title to more than one half, undivided, of said rancho, subject to the aforesaid equitable interest of said Luco. Wherefore, plaintiffs pray that by the decree of this court there be set off to the said Luco, in severalty, the said 6,083.2743 acres derived to him as aforesaid."

To this amended complaint an answer was filed, in which it is alleged that Agustin Olvera died on the sixth

day of October, 1876, and that in June, 1882, the defendant Juan de Toro was duly appointed administrator of the estate of said Olvera, deceased, and that said decedent was at the time of his death seised in fee of thirty thousand acres, undivided, of said rancho ex-mission San Diego, and that his heirs and representatives have ever since been seised in fee of said interest.

Further answering, said defendant De Toro alleges that the plaintiff's cause of action is barred by the provisions of sections 319, 337, 343, and 318 of the Code of Civil Procedure. He denies all the allegations of the complaint not admitted by said answer. By this all the material allegations of the complaint were denied, among which is the allegation of full performance by Hartman, on his part, of the contract between him and Olvera.

Upon that issue the finding of the court is as follows: "That immediately after the execution of the agreement between Agustin Olvera and Isaac Hartman, said Hartman entered upon the performance of the stipulations in said agreement contained on his part to be performed, and after his sale to plaintiff Luco, as found in finding 2, said Luco and Hartman continued in the performance of said stipulations, and did so continue by themselves, or their agents and attorneys, to prosecute to a final conclusion the agreements and stipulations in said agreement contained on the part of said Hartman to be performed; that owing to a quarrel between Hartman and Olvera, about the year 1874, Olvera became dissatisfied with Hartman, and on behalf of himself and the heirs of Santiago Arguello, the confirmee of said ex-mission rancho, employed one A. St. Clair Denver, an attorney at law of Washington City, District of Columbia, to prosecute the claims of said heirs and of the interest of said Agustin Olvera in and to the rancho ex-mission of San Diego, before the proper department, at Washington City aforesaid, and thereafter, by the joint exertions of said A. St. Clair Denver and the Honorable Cornelius Cole, acting as attorney for Hartman and Luco, a patent was duly obtained, as alleged in the com-

plaint, on the first day of September, 1876; that owing to the death of the principal parties to the said agreement, to wit, Hartman and Olvera, the great lapse of time and uncertainty of recollection of surviving witnesses, under the evidence in this case, it is impossible to determine and measure the extent of performance of plaintiff or his vendor Hartman, under the agreement aforesaid, and the court finds only that up to the time of the issuance of the patent aforesaid, there had not been a full and complete or substantial performance of that agreement on the part of Hartman or Luco as vendee, but only a partial performance thereof."

The appellant contends that a correct reading of this finding shows that Hartman fully performed, and that upon such performance his estate in equity became indefeasible. Respondent claims that the concluding sentence is a finding of the ultimate fact that there was not a full and complete or substantial performance of the agreement on the part of Hartman or Luco. The finding, in our opinion, is ambiguous and uncertain. Appellant was entitled to an unequivocal finding on the question of performance. If, however, the finding can be construed as a finding in favor of respondent on that subject, it is sufficient to say that, in our opinion, it is not supported by the evidence. We think it is clearly shown that Hartman and Luco fully performed the stipulations to be performed under the agreement. There is no substantial conflict in the evidence as to what was done by Hartman and his assignee, Luco, in procuring the patent. They did all that was necessary to be done in order that the patent might issue for the quantity of land which was finally granted. The fact that Olvera, in conjunction with other parties not parties to the contract with Hartman, deemed it proper to employ Denver to assist in procuring the patent, and that Denver did render valuable services in that connection, in no way affects the right of Hartman or Luco under the contract. Olvera could not by employing other persons defeat the rights of Hartman and Luco under the contract.

Whether the finding be regarded as contradictory and uncertain, or a finding that there was no substantial performance of the agreement on the part of Hartman and Luco, the judgment will have to be reversed, unless the finding that the cause of action was barred by the statute of limitations can be sustained. In their answer the defendants allege that plaintiff's cause of action was barred by the provisions of sections 318, 319, 337, and 343 of the Code of Civil Procedure, and upon the issues thus raised the court found that the cause of action was barred by the provisions of sections 337 and 343, but made no reference to sections 318 and 319. We cannot agree with appellant in his contention that the findings of the court on these issues are not findings of ultimate facts, but are conclusions of law. It is necessary, therefore, to consider the question as to whether these findings are supported by the evidence. We think they are not.

The court found (finding 7) that after the issuance of letters testamentary to Olvera, and before they were revoked, to wit, November 5, 1877, the plaintiff demanded of Olvera, as executor, a conveyance to him, Luco, as tenant in common, of 13,904.31 acres of the mission rancho, under and in accordance with the terms of the contract between Olvera and Hartman; and also found (finding 14) that Olvera, in his lifetime, " after the year 1874, and his representatives after his death, always repudiated any obligation under said contract to Hartman, or his assignee, Luco, and claimed to have and hold the whole interest to which he, Olvera, held the legal title when he died, adversely to Hartman or his assignee, free from any claim on the part of either under said contract." But these findings do not show a disavowal of the trust relations created by the contract, and notice to the plaintiff of such disavowal. We are left in ignorance as to the reason why Olvera refused to make the deed requested. It is not found that he refused to make the deed because he denied the existence of such relation of trustee and *cestui que trust*, nor is it found that he so stated

to Luco, or that Luco so understood his refusal. Olvera was under no obligation, in fact had no authority, to make the conveyance demanded, without an order of the probate court, and it was the duty of the party demanding the deed to apply to the court for the necessary order. (Code Civ. Proc., secs. 1597, 1598, 1600, 1606, 1607.) A repudiation of the trust by Olvera, and notice thereof, cannot therefore be predicated upon the facts found. It certainly cannot be said that the mere fact of refusal under the circumstances is sufficient to show notice to the beneficiary of such repudiation, and time begins to run against a trust only from the time it is openly disavowed by the trustee, and the adverse claim is clearly and unequivocally made known to the *cestui que trust.* Finding 14, we think, is not supported by the evidence; but assuming that it is, it simply shows a repudiation of any obligation under the contract, and an adverse claim without notice thereof to Hartman or Luco, his assignee. The testimony of Forbes shows that there was a quarrel between Hartman and Olvera in 1874, and the court finds that about that time Olvera became dissatisfied with Hartman, but the nature of the quarrel is not stated. The trouble between Hartman and Olvera seems to have been caused by the attempt on the part of the former to have Olvera removed as administrator of the estate. Olvera claimed that Hartman was working against him. This claim could not have referred to the matter of procuring a patent, and the court has found as a fact that Hartman and Luco continued in the prosecution of the stipulations contained in the agreement. If it be assumed, however, that the quarrel related to and arose out of the matters referred to in the contract, the action of Olvera could not bind Luco. Hartman had assigned his interest in the contract to Luco long prior to the time of the conversation referred to, and of this fact Olvera had both actual and constructive notice. Olvera's repudiation could not affect the rights of Luco, unless the latter had notice thereof, and there is nothing in the record to show that he ever gave notice to Luco of his

intention to repudiate the claims of Hartman under the
contract. Luco and Hartman continued to perform the
stipulations of the contract on their part to be performed
up to the time of the issuance of the patent. Luco made
large expenditures in prosecuting the claim and in pro-
curing the patent. He expended about six thousand
dollars, and gave Bolton, for the assistance rendered in
the surveyor-general's office, five hundred acres of land.

By the terms of the contract between Hartman and
Olvera an express trust was created. It is not necessary
in the creation of an express trust to use any particular
form of words. The relation of trustee and *cestui que
trust* is established, and an express trust created, if the
language used in the instrument creating the trust ex-
presses the intention that one party shall hold the legal
title and the other shall have the beneficial interest.
The language of the contract before us is a clear dec-
laration on the part of Olvera that thereafter he would
hold the legal title, in trust, for Hartman, to the extent
of the latter's beneficial interest under the contract. Full
performance by Hartman created an indefeasible estate
in equity which could not be defeated or divested by
Olvera without positive and unequivocal repudiation of
the trust relation, and notice of such repudiation to the
beneficiary. (*Miles* v. *Thorne*, 38 Cal. 338; 99 Am. Dec.
384; *Love* v. *Watkins*, 40 Cal. 547; 6 Am. Rep. 624;
*Hearst* v. *Pujol*, 44 Cal. 235; *Hoffman* v. *Vallejo*, 45 Cal.
572; *Janes* v. *Throckmorton*, 57 Cal. 388.)

In *Hoffman* v. *Vallejo*, 45 Cal. 572, it was held that an
agreement like the one before us is not against public
policy, and constitutes the attorney the equitable owner
of an undivided interest in the lands, and creates the
relation of trustee and *cestui que trust*. The statute be-
gins to run against the trust " as soon as it is openly
disavowed by the trustee insisting upon an adverse right
and interest which is clearly and unequivocally made
known to the *cestui que trust*, and when, for instance, such
transactions take place between the trustee and *cestui que
trust* as would, in the case of tenants in common, amount

to an ouster of one of them by the other." (*Speidel* v. *Henrici*, 120 U. S. 377.) Where there has been full performance by the vendee under a contract to convey the land, an indefeasible estate in equity vests in the vendee, and the possession of the vendor is presumed to be the possession of his *cestui que trust*, the vendee. The statute cannot run against one's own possession. (*Wright* v. *Ross*, 36 Cal. 433.) There can be no adverse holding "until the trustee denude himself of his trust by assuming to hold for himself, and notifies the *cestui que trust* of his treachery." (*Haynie* v. *Hall*, 5 Humph. 290; 42 Am. Dec. 427.) Respondent claims that the word "repudiate," as used in finding 14, is equivalent to and implies notice. In the case cited (*Hecht* v. *Slaney*, 72 Cal. 366), it was held simply that denial or repudiation is not necessary in order to set the statute of limitations in motion in cases of *implied* trust. There may be disavowal and repudiation of the trust without knowledge or notice of the same being brought home to the beneficiary. (*Miles* v. *Thorne*, 38 Cal. 338; 99 Am. Dec. 384.) In *Bennett* v. *Morrison*, 120 Pa. St. 390, 6 Am. St. Rep. 711, it was held that "the vendor of land sold under articles of agreement must not only in some way repudiate the agreement, but must take actual possession of the premises, either in person or by an agent, a tenant, or other vendee, in order in break the relation his vendee sustains to him under the agreement, before the statute will commence to run."

In *Love* v. *Watkins*, 40 Cal. 547, 6 Am. Rep. 624, Mr. Justice Temple said: "The conveyance from the trustee to the *cestui que trust* in such cases is but the execution of the trust; the right to obtain the legal title is but an incident to the estate of the *cestui que trust*. So long, therefore, as the estate exists, so long will the right to acquire the legal title subsist. It is like the right of a tenant in common to compel partition, and is not a cause of action which accrues in the sense of the statute of limitations, and which may be lost by the lapse of time. The trustee and *cestui que trust* have the same

title, and do not hold adversely, so long as the rights of neither are denied." Although the question presented for consideration in that case was, whether a vendee in possession under an executory contract, who had fully performed the agreement on his part, but had not obtained a deed, could compel a specific performance after the lapse of four years from the time when he might have demanded a deed, yet the doctrine announced by the learned judge is sound in principle and supported by authority. In *Harris* v. *King*, 16 Ark. 122, it was held that a vendor who had received the purchase-money became the trustee of the vendee, and, although actually in possession of the land, held the naked legal title in trust for him, and the statute of limitations was no bar to an action for a specific performance of the contract, if the vendor had done no act inconsistent with the vendee's title, other than simply holding possession. In *Graham* v. *Nelson*, 5 Humph. 605, it was held that the possession of the vendor before conveyance would be construed for the benefit of the *cestui que trust*, where it could be reasonably presumed to be in accordance with the trust, and the statute would not run. In that case none of the parties was in possession of the land. (See also Angell on Limitations, secs. 137, 138; *Hemming* v. *Zimmerschitte*, 4 Tex. 159; *Lewis* v. *Hawkins*, 23 Wall. 125; Pomeroy's Eq. Jur., secs. 105, 147, 155, 368, 1010, 1046.)

In *Rush* v. *Barr*, 1 Watts, 110, the court said: "The statute of limitations is a most useful one, and ought not lightly to be frittered away; but there are cases to which it does not apply. Whenever the legal title is in one, and the real interest in another, these form but one title, and the statute does not run between them until the trustee disclaims and acts adversely to the *cestui que trust*. . . . . And so in all cases where two persons have each an interest in a tract of land of such kind that both their interests form but one title, and by their agreement one is to possess for his own use, and the use of the other. In such cases the statute does not run until

he in possession disclaims the right and interest of the other, — denies his right and refuses possession, — and such disclaimer and denial must be such that the other has notice of it. It is not sufficient that it is denied secretly, or an agreement inconsistent with it is made and concealed." (See also Hill on Trustees, 264, note 3; *Huntley* v. *Huntley*, 8 Ired. Eq. 250; Tiffany and Bullard on Trusts, 715–717.)

In *Hemming* v. *Zimmerschitte*, 4 Tex. 159, Chief Justice Hemphill, speaking for the court, said: "It is an acknowledged principle that vendor and vendee, under an executory contract for the sale of lands, occupy, mutually and respectively, the relation of trustee towards each other (Sugden on Vendors, 160), so long as they do not indicate by their acts an intention to refuse compliance with the obligations imposed by their contract. In this case the vendee having performed his obligations, the vendor's subsequent possession or interest in the land was held in trust, and in subordination to the superior equitable right of the vendee; and this possession would continue to maintain its fiduciary character until the vendor would manifest an intention to claim and enjoy the land as his own."

In *Holman* v. *Criswell*, 15 Tex. 394, the court applied the same rule. In that case, like the one at bar, there had been no actual possession by either party. The court said: "The obligations of the vendee having been already discharged, limitation would not run against the vendee until the vendor manifested an intention by adverse possession or some hostile act to claim and hold the land as his own."

In this case the transcript shows no words or conduct on the part of Olvera indicating an intention to repudiate the trust; at least there is nothing in the record to show that Luco had any notice of such an intention. After the assignment by Hartman to the plaintiff, the former could not by any statement to Olvera prejudice the rights of Luco, unless thereafter there was a failure by him and plaintiff to perform the work required by

the contract.   At the time it was alleged and found that
Hartman said he would have nothing further to do with
the matter, no cause of action had accrued against which
the statute of limitations could be put in motion, and,
as we have seen, Hartman and Luco fully performed the
conditions of the contract, and the estate of Olvera re-
ceived the benefit of their work.

Nearly all of the cases relied on by respondent are
cases of resulting or implied trusts.   In such cases it
is uniformly held that possession is necessary to prevent
the running of the statute.   In cases of express trust
cited by respondent, it is true the courts rested their
decisions upon the ground that the possession of the *cestui
que trust* was sufficient to prevent the bar.   No authority
has been cited holding that in case of an express trust
the statute will run against the vendee after full perform-
ance because he is out of possession, except *Brennan* v.
*Ford,* 46 Cal. 7; and what was said there on the subject
was unnecessary to the decision, which went upon the
ground that Brennan's cause of action did not accrue
until the delivery of the deed, January 31, 1867 (within
four years prior to the commencement of the action).
The actual possession of the vendor or non-possession
of the vendee is a circumstance, of course, to be con-
sidered in determining whether there has been a repu-
diation of the trust and notice thereof to the vendee.
But it is not controlling.   The relations existing between
vendor and vendee after full performance are governed by
the same rules as those which exist between ordinary
tenants in common, so far as repudiation of title and
ouster are concerned.   (*Speidel* v. *Henrici,* 120 U. S. 377.)

Upon the issuance of the patent in September, 1876,
the plaintiff became vested with an equitable estate *in*
the land, and not merely a right *to* the land, as fully as if
he had made a contract of purchase and had paid the full
amount of the purchase price.   The defendant thereafter
held the legal title in trust for him, and the constructive
possession which followed the legal title inured to the
benefit of the plaintiff as well as to the benefit of the

defendant. The plaintiff could be divested of this estate in the land by transfer or adverse possession, but not by mere lapse of time. The court did not base its decision upon any adverse holding of the defendant, but upon the ground that the action should have been commenced within four years after the plaintiff had acquired the right to a conveyance, or within four years after the repudiation of his claim by the defendant. It may be conceded that if the action were merely to procure a deed of conveyance in accordance with the terms of the agreement, the statute of limitations would be a defense, upon the ground that such action, being purely personal, would be barred by lapse of time. It would not follow, however, that even upon such failure the plaintiff would be unable to maintain his action in partition. The deed of conveyance would be only additional evidence of his rights in the land. It is not necessary that the plaintiff in an action for partition should have the legal title to the land. (*Watson* v. *Sutro*, 86 Cal. 527.) The facts establishing his right to the land can be shown in the suit for partition, and the same result must follow therefrom, without regard to the character of evidence by which they are shown. Under our system of procedure the form of action is disregarded, and the plaintiff seeking relief is required to state only the facts constituting his cause of action. This, however, is not an action on the contract between Hartman and Olvera. That contract is simply a piece of evidence which the plaintiff uses in establishing his right to the land as he would a deed or any other evidence of title. A finding of the court that the contract had been completely executed on the part of Hartman would, of itself, be a determination that the plaintiff is entitled to the land provided for in the contract. The contract would then cease to be an element in the case, and such finding of complete performance would throw upon the defendant the burden of showing some act upon his part subsequent thereto sufficient in law to divest the plaintiff of his right to the land.

We do not think the amendment to the complaint filed December 13, 1886, stated a new cause of action. The action was originally commenced for a partition of the rancho.    The amendment merely stated more particularly the source and evidence of plaintiff's title. That evidence does not constitute the cause of action.

We think that in this action for a partition there can be no doubt that the parties may assert any title which they have, legal or equitable.    (*Gates* v. *Salmon*, 35 Cal. 593; 95 Am. Dec. 139; *Martin* v. *Walker*, 58 Cal. 596; *Watson* v. *Sutro*, 86 Cal. 527.)    In equity the plaintiff has a perfect title.    At the time this action was commenced he had the legal title to several thousand acres of land, besides the equitable title to the lands in controversy.    The court had jurisdiction of the subject-matter, and acquired jurisdiction of the parties.

It is claimed by respondent that the specifications of insufficiency of the evidence are not made with sufficient particularity to entitle appellant to question the findings of the court.    We think this point is not well taken.

A number of errors are assigned by appellant, but in one only we think there is merit.    The plaintiff offered to prove that he and Hartman expended large sums of money to preserve the estate of Arguello.    The offer was rejected, and plaintiff excepted.    In view of the fact that defendant claimed Hartman had abandoned his demand under the contract, it was material and relevant, we think, to show that Hartman and Luco were performing services and spending large sums of money to preserve the estate of Arguello, in order that there would be something to divide after payment of the debts and expenses of administration, and after the patent should be issued.

Judgment and order reversed, and cause remanded for a new trial.

HARRISON, J., SHARPSTEIN, J., and GAROUTTE, J., concurred.

BEATTY, C. J., dissenting.— I dissent. There was nothing in the contract between Olvera and plaintiff's assignor, Hartman, to distinguish it from any other executory contract to sell land. A right of action to enforce specific performance of Olvera's contract to convey accrued, if ever, upon the issuance of the patent in September, 1876, and was barred in four years. This action — as between Luco and De Toro — is, in effect, nothing more nor less than an action on that contract, — to specifically enforce it, — and it was not commenced until more than six years after the statute had begun to run, and two years after the bar had attached.

As to other points discussed in the opinion of the court I express no opinion.

DE HAVEN, J., dissenting. — I dissent from the judgment, and concur in the foregoing opinion of Chief Justice Beatty.

McFARLAND, J., dissenting.— I dissent from the judgment of reversal, and adhere to former opinion.

The following is the opinion above referred to by Mr. Justice McFarland, rendered in Bank on the 27th of June, 1888:—

McFARLAND, J. — This is an action for the partition of the rancho mission (or ex-mission) of San Diego. There was originally a great many parties, both plaintiff and defendant, to the action; but as the interlocutory decree was satisfactory to all the parties except the plaintiff Luco and the defendant De Toro, it was stipulated that a final decree should be entered, with permission to said Luco and De Toro to further litigate between themselves. The case was thus ended as to all the other parties; the only question left being whether Luco or De Toro was entitled to a certain specific segregated tract of 5,053 acres of the rancho. This tract was set apart to Luco upon the theory that a commissioner's deed to him, in pursuance of a decree of the superior court of San Francisco, passed the legal title. This decree was in an action

brought by Luco against one Carlos Olvera, as executor
of the estate of Agustin Olvera, deceased, to compel the
execution of a deed for the land in controversy according
to the terms of a certain contract made between said
Agustin Olvera, deceased, and one Isaac Hartman.  In
that action, Carlos Olvera made default; but upon ap-
peal, in the case at bar, this court reversed that part of
the decree which awarded the land to Luco, upon the
ground that Carlos Olvera was not the executor of said
estate when said action was commenced, or during its
pendency. (*Luco* v. *Bank*, 70 Cal. 339.)  Upon the
return of the cause to the court below, Luco filed an
amendment to the complaint, in which he set up for
the first time the said contract between said Agustin
Olvera, deceased, and said Hartman, and the conveyance
by Hartman of his interest, under said contract, to Luco,
and claimed an equitable interest in the land.   The
court gave judgment for defendant De Toro, and the
plaintiff Luco appeals.  The amendment to the complaint
was filed December 13, 1886, and the original complaint
was filed August 8, 1882.   On the third day of February,
1869, Agustin Olvera was the owner and in possession
of an undivided interest of more than one half of said
rancho of the ex-mission of San Diego.   On that day he
entered into a written contract with Isaac Hartman, who
was an attorney at law, by which Hartman undertook
and agreed " to procure a patent from the United States
for the lands of the ex-mission of San Diego, county of
San Diego," etc.; and Olvera agreed to pay certain mon-
eys for expenses, and also, when the patent had been
obtained, to convey to Hartman a certain undivided in-
terest in said lands.   On the twenty-third day of March,
1879, Hartman assigned and conveyed all his right which
he obtained under said contract to said lands to the
plaintiff herein, Juan M. Luco.   The patent was issued
by the United States on the first day of September, 1876;
and if plaintiff Luco, by virtue of said contract and said
conveyance from Hartman, is entitled to any interest in
said lands, he is entitled to the quantity first set apart

to him by the court below. Neither Hartman nor Luco was ever in possession of any part of said rancho under said contract. Leaving minor matters out of view, there are two main questions in this case; and the correct decision of either of them in favor of the respondent must be followed by an affirmance of the judgment. And these questions are, — 1. Did Hartman and his assignee Luco, comply with their agreement in said contract to procure a patent for said lands? and 2. If they did, then was appellant's cause of action under said contract barred by the statute of limitations?

1. It is contended by appellant that finding 5 is to the effect that the contract was complied with; and respondent contends that in said finding the court finds that the contract was not complied with. If we were compelled to decide this point, we would probably have to hold that the finding is contradictory and insufficient; but, with our view of the second main question in the case it is unnecessary to determine the character and effect of said finding 5.

2. The court found, and found correctly, that appellant's cause of action was barred by the statute of limitations. The contention of appellant that the findings of the court on the subject of limitation are insufficient, because mere conclusions of law, cannot be maintained. The averments of the answer are, that the cause of action stated in the complaint is barred by the provisions of section 337, and also by the provisions of section 343, of the Code of Civil Procedure; and the finding of the court is, that said cause of action was barred by the provisions of said sections before the commencement of the action. The finding " is as broad and specific as the plea," and is therefore sufficient. (*Oakland Gas Light Co.* v. *Dameron,* 67 Cal. 663; *Duff* v. *Duff,* 71 Cal. 513.) And we think that the finding is sustained by the evidence and correct in law. Assuming that the right set up by an appellant can be considered and adjudicated in an action for the partition of real property, still it is, in its nature and essence, only a right to enforce the specific

performance of a naked agreement to convey land. We do not see how the contract between Olvera and Hartman established these continuing — and, we might say, eternal — trust relations so strenuously contended for by counsel for appellant. By that contract no special trust was placed by one of the parties in the other. The property of one was not given to the other to be used by the latter for the benefit of the former. It was a mere covenant by Olvera that if Hartman would perform certain services, he, Olvera, would, in consideration of such services, convey to Hartman à certain interest in certain lands. If, therefore, there was ever a performance of the services by Hartman, or his grantee, Luco, he had a right to the conveyance at the time of that performance; and at that time his cause of action accrued. But if he performed those services at all (that is, if he procured a patent for the rancho), he must have done so on or prior to the first day of September, 1876; for on that day the patent for the rancho was issued. His cause of action therefore accrued on September 1, 1876; and this action was not commenced until August 8, 1882, — nearly six years afterwards. But the action was barred in four years, under either section 337 or section 343 of the code. Moreover, if a demand for a conveyance had been necessary, — and no such demand was necessary, — it is found that on November 5, 1877, appellant demanded of the executor of Agustin Olvera, deceased, that he convey to appellant the said interest in said lands claimed under said contract, and that said executor refused to do so. That was more than four years before the commencement of this action. (And it may be remarked that appellant's cause of action, founded upon his alleged equitable interest in the land, was not set up until the time of the amendment to the complaint, which was December 13, 1886.) And again, if the relation between Olvera and Hartman could be considered in any sense a trust, the court finds, and we think upon sufficient evidence, that from the year 1874 said "Agustin Olvera in his lifetime, and his representatives after

his death, always repudiated any obligation under said contract to Hartman or his assignee, Luco, and claimed to have and hold the whole of the interest to which he, Olvera, held the legal title when he died, adversely to Hartman or his assignee, free from any claim on the part of either under said contract." The cases relied on by appellant are cases where the vendee was in possession, and where it was held that the statute does not run so long as the vendee remains in possession with the acquiescence of the vendor. Such was the case of *Love* v. *Watkins*, 40 Cal. 548, and others cited. But in these cases a very different principle came into play. In the case at bar neither Hartman nor Luco was in possession of any land under the contract, and there was nothing for respondent or his decedent to acquiesce in.

Judgment and order denying a new trial affirmed.