OLCESE KRAMER AND ANN KRAMER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OLCESE KRAMER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 103505, 103506. Promulgated April 14, 1942.

*Melvin D. Wilson, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

**OPINION.**

HARRON: The petitioner contends that the agreement with his attorney in the matter of compensating him for his services in the suit to establish petitioner's title and interest in the estate of his

father was such that there was an assignment of an equitable interest to the attorney in the judgment which petitioner obtained against the estate. Petitioner argues that the attorney owned a "beneficial interest in the judgment and in the assets to be received thereunder", and that petitioner was merely a "trustee as to the attorney's share." Upon these contentions petitioner asks the Board to hold that the amounts which petitioner paid to his attorney in 1936 and 1937 were the attorney's income, upon the theory that he had an equitable interest in the amounts paid to him, or in the property recovered as a result of the litigation. Petitioner cites *Blair* v. *Commissioner*, 300 U. S. 5, as authority supporting his theory in this case. In the alternative, if it is held that the amounts in question were petitioner's income, petitioner contends that he is entitled to deductions in each year for the attorney fees paid, as ordinary and necessary business expense.

The question here is very largely a question of fact. The first inquiry is, What exactly was the agreement between petitioner and his attorney, from which the conclusions of law are to be made?

In the first place there was no written agreement between petitioner and his attorney until after the litigation had come to conclusion in a final judgment when, on September 28, 1934, petitioner executed a trust agreement for the benefit of Williams, and his associate counsel, Irwin. Whatever the arrangement was which petitioner made with Williams before suit was instituted against the Olcese estate, it was oral. No testimony was given in this proceeding, petitioner appearing only through his counsel who submitted the case on a written stipulation.

In 1936 and 1937 petitioner's obligation with respect to the payment of attorney fees was controlled by the terms of the trust agreement of 1934, particularly paragraph two. There the amount of the fees to be paid is prescribed in terms of a proportion of the value of all moneys and properties received by petitioner from the estate, and payment is to be made in cash out of money distributed by the estate or out of money realized by petitioner from the sale of property distributed by the estate. Although it is provided that fees *could be* paid by conveyance to the beneficiaries of a specified interest in properties (the clear inference being that such arrangement would be the subject of a separate agreement) there is no evidence that such agreement had been made prior to or in the taxable years.[1] In the

---

[1] Some letters written in May of 1941, either to petitioner or to his counsel in this proceeding, were received in evidence, which state that in 1938 and 1939 certificates for shares of various stocks which had been in petitioner's name were canceled, and new certificates were issued to petitioner and to Williams; that since receipt of instructions from petitioner dated April 27, 1940, 25 percent of certain oil royalties, in which petitioner owns a 21½ percent interest, have been paid to Williams direct; that in 1941, 5⅜ percent of all distributions from the Olcese estate were being paid direct to Williams on account of his

taxable years the fees paid were paid in cash, there being no distribution of any property to the attorneys or any transfer of any interest in property to the attorneys.

In order for petitioner to succeed in his claim that the money paid to his attorneys was their income rather than his, it must be established, clearly, that the attorneys had a legal or an equitable interest in the properties which produced the income. (It appears that the money in question represented earnings derived from various properties.) It must be shown that the attorneys had such interest that they could have demanded and received payment direct from the Olcese estate, rather than from petitioner. Broadly speaking, the attorneys must have obtained *a property right*, as a result of an agreement with petitioner, in order that the amounts paid to them can be held to constitute their income. *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U. S. 565; *Commissioner* v. *Field*, 42 Fed. (2d) 820; *Blair* v. *Helvering*, 300 U. S. 5; *Julius E. Lilienfeld*, 35 B. T. A. 391; *Louis Boehm*, 35 B. T. A. 1106.

Through certain decisions of California courts, and under the special facts of those cases, referred to hereinafter, the following rule has been developed in California:

Where an attorney contracts for a contingent fee consisting of a part of the property to be recovered, he becomes an equitable owner of the designated part of whatsoever thereafter results from the prosecution or compromise of the suit. 3 Cal. Juris, 695.

Illustrations of the above rule are found in the following cases: *Luco* v. *De Toro*, 91 Cal. 405; 27 Pac. 1082; *Hoffman* v. *Vallejo*, 45 Cal. 564; *Elliott* v. *Leopard Mining Co.*, 52 Cal. 355. In each of these cases the client made a written agreement with an attorney to convey to him an interest in land.

In the *Luco* case there was an agreement in writing to convey an undivided interest in certain lands, the size of the interest depending upon the extent of a patent which was to be obtained by the attorney. The patent was obtained after performance of services by the attorney. The court held that under the terms of the agreement an express trust was created, and that the owner of the patent to the lands held part of them in trust for the attorney. The attorney's performance of his services entitled him to and gave him an in-

25 percent interest in petitioner's 21½ percent interest; and that 5⅜ percent of certain other oil royalties were being paid in 1941 to Williams on account of his 25 percent interest in petitioner's 21½ percent interest in certain oil leases. However, none of these letters shows that any assignment of a 25 percent interest in stocks, oil royalties, or other properties was made in 1936 or 1937, and the letters can be given no weight in our consideration of the question in 1936 and 1937. At the most, they are only indicative (and no conclusion is made here with respect thereto) that at some time after 1937 petitioner may have entered into another agreement with his attorneys that they should receive an interest in properties, as the 1934 trust agreement specified might be the subject of agreement.

defeasible estate in equity. The court regarded the contract with the attorney as one similar to a contract to convey land.

In the *Hoffman* case, a former owner of lands, Vallejo, wished to institute proceedings against J. G. Clark, mortgagee, to set aside as fraudulent a sheriff's sale in order to regain title to the lands. He entered into a written agreement with Hoffman and the Wilsons, attorneys, retaining them to institute suit, in which agreement Vallejo agreed:

* * * to convey by good and sufficient deed or deeds of conveyance, to the said parties of the second part [the attorneys], one undivided half of all of his right, title, and estate in said rancho or tract of land, * * * to be equally divided between the parties of the second part, and the undivided one-half of all that may be recovered, * * * or any litigation, settlement, or compromise of the matters aforesaid, * * * such deeds to be made or such moneys to be paid to the parties of the second part on demand, and no settlement or compromise of any of the matter aforesaid shall be made without the consent of the parties of the second part in writing expressed.

The agreement also provided that in the division of any property recovered the division should be equal in value between Vallejo and the attorneys, and that Vallejo should receive his proportion of the property recovered by the proceedings free from any fees of the attorneys, court costs, or referee's fees. Later, after the attorneys had expended labor, time, and money on the matter, Vallejo secretly entered into a settlement with Clark by which he confirmed the sale previously made by the sheriff to Clark in consideration for $12,500 paid by Clark to X at Vallejo's request. Thereupon X conveyed certain lands to Vallejo's son, who held the lands in trust for his father. Hoffman brought suit against Vallejo's son, praying that one-half of the lands should be conveyed to him and an accounting made for profits. The court held in the *Hoffman* case that the written agreement made by Vallejo constituted Hoffman and the Wilsons the equitable owners of one-half of whatever resulted from the prosecution or the compromise of the suit against Clark, and that Vallejo's son held title to one-half of the new lands in trust for Hoffman and the Wilsons.

In *Elliott* v. *Leopard Mining Co.*, *supra*, clients made an agreement with their attorneys, who were to institute suit to settle or quiet title to certain mining claims, to convey to the attorneys by deed an undivided one-fourth of certain mining claims, or, if the suit was settled by compromise, to give the attorneys one-fourth of the proceeds of whatever might be realized. The suit was settled by compromise. It was held that the attorneys had a right to receive one-fourth of the proceeds, their interest in them being the same as a right to an interest in the mining claims, and those who received the proceeds were required to pay one-fourth thereof to the attorneys.

In the instant proceeding there was no written agreement to convey to the attorneys a portion of any real or personal property which might be recovered, and the facts here differ materially from the facts in the above cases on which petitioner relies. The agreements in those cases differ from the oral agreement and the terms of the 1934 trust agreement involved here, chiefly, because in the agreements in the above cases reference was made to described lands, and the attorneys, without doubt, received under the agreements proportionate equitable interests therein, or in a similar proportion of any proceeds received in lieu of the properties themselves. On the other hand, in this case, under the oral agreement, as incorporated in the 1934 trust agreement, with or without modification (however that may be, the 1934 trust agreement being determinative of the question in the taxable years), title to all properties or interests in properties in the Olcese estate was to remain in petitioner, the value of petitioner's interest in the estate had to be determined, and then the attorneys were to be paid by petitioner in cash 40 percent of the clear value up to $50,000, and 25 percent of the remaining clear value over $50,000. The agreement in this case, as it stood during and prior to the taxable years, was an agreement to pay fees to the attorneys, the amount thereof to be measured and fixed after conclusion of the litigation by reference to the clear values of all money and property (or interest therein) awarded to petitioner. It is pointed out that the 1934 trust agreement provided that it was entered into to secure "the payment of such indebtedness [for fees]", and that "upon payment in full of the fees due", the trustee was to reconvey to petitioner *all* of the interest in property held by him. Under such agreement it can not be said that the attorneys were given an interest in the property or in the judgment, or that they were given any property rights productive of the sums which petitioner paid to them in the taxable years. That being so, the amounts in question, which were paid to the attorneys, can not be said to have grown out of any other "tree" than the bundle of property rights which vested solely in petitioner under the awards of the Superior Court. There was no equitable ownership in any part of the properties in the Olcese estate, as a result of the agreement made by petitioner with his attorneys and upon entry of judgment by the court, from which the attorneys derived a right to receive any part of the income produced by properties in the estate, directly or indirectly. Cf. *Blair* v. *Helvering*, 300 U. S. 5, and see comments on the meaning of the holding in the *Blair* case in *Helvering* v. *Horst*, 311 U. S. 112. Rather, complete ownership of the 21½ percent interest in the Olcese estate was in petitioner. That being so, and under the rule that tax liability attaches to ownership of, and

command over, property, petitioner is taxable on all of the income which he received from his interest in the properties in the Olcese estate, which, of course, includes the sums paid to the attorneys in the taxable years. *Poe* v. *Seaborn*, 282 U. S. 101; *Hoeper* v. *Tax Commission of Wisconsin*, 284 U. S. 206; *Corliss* v. *Bowers*, 281 U. S. 376; *Burnet* v. *Wells*, 289 U. S. 670.

An agreement with an attorney to pay a certain sum out of a fund one is entitled to receive, when received, does not operate as a legal or equitable assignment of a present right. *Donovan* v. *Middleton*, 88 N. Y. S. 607; *Thomas* v. *N. Y. & G. L. R. R. Co.*, 34 N. E. 877. See also 6 Corpus Juris 742, par. 317, where it is said that:

\* \* \* in order that an agreement for a contingent fee may operate as an equitable assignment, there must be in effect a constructive appropriation of so much of the amount to be recovered as will confer upon the attorney a complete and present right to receive the same without the further intervention of the client.

The facts here are rather close in similarity to the facts in *Lansill* v. *Burnet*, 58 Fed. (2d) 512, on which respondent relies. There the clients agreed to pay an attorney "a sum equal to 10 percent of the full amount or value received by the heirs in money or property resulting from litigation or compromise of the case." It was held there that the entire money (royalties) when collected for the heirs became in fact and law the income of the heirs, and was returnable as such. In our opinion that case is controlling here. See also, *United States Trust Co. of New York, Executor*, 27 B. T. A. 1260.

It is held that the amounts in question were petitioner's income and were properly included in his taxable income in 1936 and 1937. Respondent is sustained.

As an alternative contention, petitioner claims that the expenditures made for attorney fees are deductible under section 23 (a) of the Revenue Act of 1936 as ordinary and necessary business expense. Petitioner does not urge this very strongly, failing to cite any authorities which, under the facts, support this contention. It is clear that the transactions involved here which caused petitioner to pay the attorney fees were not part of any business carried on by him. The matters involved related only to petitioner's personal interests. Under the circumstances present here the cost of defending title to property does not constitute a deductible expense under the statute. *Hutchings* v. *Burnet*, 58 Fed. (2d) 514, and cases cited therein; *Robert J. Harbison*, 43 B. T. A. 1098.

*Decision will be entered for the respondent.*