*Decision will be entered under Rule 50.*

ESTATE OF DAVID B. GADLOW, DECEASED, BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, AND MARGARET B. GRAHAM, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3133–67. Filed September 30, 1968.

*Allen M. Singer*, for the petitioners.
*Harry M. Asch* and *Edward B. Simpson*, for the respondent.

### OPINION

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax of David B. Gadlow (hereinafter sometimes referred to as Gadlow) for the taxable year 1963 in the amount of $12,069.44. The only issue for our determination is how section 1305,[1] I.R.C. 1954,[2] applies to Gadlow's damage award in computing the limitation of income tax under this section.

---

[1] Sec. 1305 herein involved is only effective for taxable years beginning prior to Dec. 31, 1963, as it was amended by Pub. L. 88–272. See fn. 4 for the pertinent portions of section here applicable.

[2] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

All of the facts are stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference.

Petitioners are the Bank of America National Trust & Savings Association and Margaret B. Graham, the duly authorized executors of the Estate of David B. Gadlow. As of the date of filing the petition in this case with the Tax Court, the Bank of America's principal office was in San Rafael, Calif., and Margaret B. Graham's legal residence was in San Francisco, Calif.

The deceased, David B. Gadlow, filed an individual Federal income tax return for the calendar year 1963 with the district director of internal revenue, San Francisco, Calif. Gadlow died testate on October 22, 1965, and at the time of his death he legally resided in San Anselmo, Calif.

For all the taxable years here relevant, Gadlow was a real estate broker. His taxable periods were calendar years and he computed his taxable income on the cash method of accounting.

In the course of his business, Gadlow entered into a contract with another real estate broker, Joseph B. Simon (hereinafter sometimes referred to as Simon), of Philadelphia, Pa., and his company known as Joseph B. Simon & Co. (hereinafter sometimes referred to as Simon Co.).

As a result of the contract Gadlow was to earn and did in fact earn commissions or fees from various real estate transactions.

Simon breached the contract and Gadlow did not receive the fees or commissions to which he was legally entitled. Gadlow instituted a breach of contract damage suit in the Federal District Court for the Eastern District of Pennsylvania against Simon and Simon Co. As a result of this litigation Gadlow paid attorneys' fees and expenses in his taxable years as follows:

| Year | Amount |
|---|---|
| 1959 | $6, 292. 94 |
| 1960 | 3, 842. 97 |
| 1961 | 8, 048. 49 |
| 1962 | 1, 614. 31 |
| 1963 | 56, 000. 00 |
| Total | 75, 798. 71 |

The law firm of Obermayer, Rebmann, Maxwell and Hippel of Philadelphia, Pa., was employed by Gadlow to represent him in the suit. They were the only attorneys who represented Gadlow in the litigation, and the aforementioned attorneys' fees and expenses incurred as a result of the litigation were paid by Gadlow to this law firm. The employment by the decedent of this law firm was on an hourly basis, rather than a contingent fee basis.

As a result of the litigation Gadlow received in 1963 an award totaling $94,789.33 plus interest. The principal amount of the award was for breach-of-contract damages for the following fees and commissions earned by him for the following taxable years:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1953 | $3, 880. 73 | 1960 | $7, 789. 88 |
| 1955 | 750. 00 | 1961 | 8, 450. 63 |
| 1956 | 21, 534. 08 | 1962 | 8, 670. 85 |
| 1957 | 22, 245. 10 | 1963 | 4, 029. 30 |
| 1958 | 4, 343. 24 | | |
| 1959 | 13, 095. 52 | Total | 94, 789. 33 |

Gadlow's damages award was paid by checks made payable to David B. Gadlow and Obermayer, Rebmann, Maxwell and Hippel, his attorneys. The checks required the endorsement of both payees, and after endorsement by the law firm the checks were delivered to Gadlow who then paid all attorneys' fees then due and owing in the amount of $40,000 by his own personal checks.

The additional $16,000 of the attorneys' fees was paid by Gadlow sometime during 1963.

Gadlow, on his 1963 income tax return, reported taxable income of $64,758.44. On line 12 of the tax return designated "Tax," Gadlow inserted the figure $25,962.14 with the notation "See schedule of limitation under Sec. 1305."

In one of the schedules attached to the 1963 return the expenses were prorated and deducted from the allocated income. That schedule recites:

*Year 1963*

Schedule of Pro Rata of Income and Expenses for Lump Sum Received in 1963

| Year | Gross income chargeable to year | Prorata share of expenses | Net income chargeable to year |
|------|---------------------------------|---------------------------|-------------------------------|
| 1953 | $3, 880. 73 | $3, 103. 25 | $777. 48 |
| 1955 | 750. 00 | 599. 74 | 150. 26 |
| 1956 | 21, 534. 08 | 17, 219. 77 | 4, 314. 31 |
| 1957 | 22, 245. 10 | 17, 788. 40 | 4, 456. 70 |
| 1958 | 4, 343. 24 | 3, 473. 10 | 870. 14 |
| 1959 | 13, 095. 52 | 10, 471, 89 | 2, 623. 63 |
| 1960 | 7, 789. 88 | 6, 229. 22 | 1, 560. 66 |
| 1961 | 8, 450. 63 | 6, 757. 59 | 1, 693. 04 |
| 1962 | 8, 670. 85 | 6, 933. 69 | 1, 737. 16 |
| 1963 | 4, 029. 30 | 3, 222. 06 | 807. 24 |
| Totals | 94, 789. 33 | 75, 798. 71 | 18, 990. 62 |

In another schedule attached to this return, the amounts in the above column designated "Net Income Chargeable to Year" were then added

to each year's income by Gadlow. Also, legal expenses deducted in the years paid were added back into income. That schedule recites:

*Year 1963*

SCHEDULE OF TAX LIMITATION UNDER SEC. 1305, I.R.C.

| | 1953 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|
| Income including pro rata of lump sum received in 1963: | | | | | |
| Total income | $22,131.43 | ($6,249.24) | $6,711.90 | $20,499.09 | $16,478.82 |
| Add: Expenses in connection with trial deducted as paid | | | | | |
| Deduct: Gross proceeds of suit | | | | | |
| Add: Pro-rata share of net income from lump sum received per schedule attached | 777.48 | 150.26 | 4,314.31 | 4,456.70 | 870.14 |
| Revised net income | 22,908.91 | (6,098.98) | 11,026.21 | 24,955.79 | 17,348.96 |
| Adjustment of carryback 1955 loss | (6,098.98) | | | | |
| Less: | | | | | |
| Standard deduction | 1,000.00 | | 1,000.00 | 1,000.00 | 1,000.00 |
| Personal exemption | 600.00 | | 600.00 | 600.00 | 600.00 |
| Revised net taxable income | 15,209.93 | 0 | 9,426.21 | 23,355.79 | 15,748.96 |
| Tax thereon | 5,397.26 | 0 | 2,444.91 | 9,179.92 | 5,082.01 |
| Additional tax resulting from pro rata of lump-sum receipt | 491.70 | 0 | 1,230.33 | 2,503.40 | 408.96 |

| | 1959 | 1960 | 1961 | 1962 | 1963 |
|---|---|---|---|---|---|
| Income including pro rata of lump sum received in 1963: | | | | | |
| Total income | $8,517.56 | $12,159.56 | $7,349.51 | $3,698.17 | $66,358.44 |
| Add: Expenses in connection with trial deducted as paid | 6,292.94 | 3,842.97 | 8,048.49 | 1,614.31 | 56,000.00 |
| Deduct: Gross proceeds of suit | | | | | (94,789.33) |
| Add: Pro-rata share of net income from lump sum received per schedule attached | 2,623.63 | 1,560.66 | 1,693.04 | 1,737.16 | 807.24 |
| Revised net income | 17,434.13 | 17,563.19 | 17,091.04 | 7,049.64 | 28,376.35 |
| Adjustment of carryback 1955 loss | | | | | |
| Less: | | | | | |
| Standard deduction | 1,000.00 | 1,000.00 | 1,000.00 | 704.96 | 1,000.00 |
| Personal exemption | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| Revised net taxable income | 15,834.13 | 15,963.19 | 15,491.04 | 5,744.68 | 26,776.35 |
| Tax thereon | 5,122.04 | 5,182.70 | 4,960.79 | 1,293.62 | 11,221.34 |
| Additional tax resulting from pro rata of lump-sum receipt | 3,442.30 | 2,330.07 | 3,596.42 | 737.62 | 499.57 |

And, in a further schedule attached to the 1963 return, the amounts determined as additional tax were computed as illustrated below:

*Year 1963*

SCHEDULE OF TAX LIMITATION UNDER I.R.C. SEC. 1305

| | Tax computation excluding lump sum received in 1963 | Tax computation including lump sum received in 1963 |
|---|---|---|
| Total income reportable | $27,569.11 | $66,358.44 |
| Less: | | |
| Standard deduction | 1,000.00 | 1,000.00 |
| Personal exemption | 600.00 | 600.00 |
| Net taxable income | 25,969.11 | 64,758.44 |
| Tax thereon | 10,721.77 | 38,031.58 |
| Total tax due in 1963: | | |
| Tax from above | 10,721.77 | |

Additional tax for years affected by pro rata of lump sum per schedule attached:

| | | | |
|---|---|---|---|
| 1963 | $499. 57 | 1957 | $2, 503. 40 |
| 1962 | 737. 62 | 1956 | 1, 230. 33 |
| 1961 | 3, 596. 42 | 1955 | |
| 1960 | 2, 330. 07 | 1953 | 491. 70 |
| 1959 | 3, 442. 30 | | |
| 1958 | 408. 96 | Total tax due | 25, 962. 14 |

The Commissioner's method of computation under the provisions of section 1305 reflects that the tax for the year 1963 is $38,031.58, as follows:

*1963*

(A) Taxable income including lump-sum payment _____ $64, 758. 44
Tax _____ 38, 031. 58
(B) Taxable income not including lump-sum payment (or any portion thereof) _____ (28, 430. 89)
Tax _____ 0
(C) Tax per proration of lump-sum payment _____ 43, 008. 38
(D) Correct tax for 1963, the lesser of A or B plus C [3]_____ 38, 031. 58

In order to determine the proper treatment of Gadlow's award under section 1305, the following questions must be answered: (1) Whether the total amount of damages awarded to Gadlow in the breach of contract suit must be included in his gross income for the taxable year 1963; (2) if so, whether Gadlow may deduct the attorneys' fees he paid during 1963 in computing the amount of income he may "spread back" in computing his tax under section 1305(a); [4] and if not (3) whether Gadlow incurred a net operating loss in the taxable year 1963 under section 172 so as to carry back this loss to years prior to 1963.

Initially, petitioners argue that the full amount of Gadlow's judgment, $94,789.33 plus interest, was not income to him during 1963, but rather, only the amount of the judgment less the attorneys' fees he was obligated to pay.

Petitioner relies upon *Cotnam* v. *Commissioner*, 263 F. 2d 119 (C.A. 5, 1959), reversing 28 T.C. 947. In that case, we held that Mrs. Cotnam realized income in the full amount of her award even though her attorneys received 40 percent of the award in accordance with their contingent-fee arrangement. The Court of Appeals reversed this Court relying heavily on an Alabama statute which provided that an attorney "have the same right and power over said suits, judgments and

---

[3] Sec. 1.1305-1(d)(1), Income Tax Regs., provides for this computation in order to determine the limitation of tax under sec. 1305.

[4] SEC. 1305. BREACH OF CONTRACT DAMAGES.

(a) GENERAL RULE.—If an amount representing damages is received or accrued by a taxpayer during a taxable year as a result of an award in a civil action for breach of contract or breach of a fiduciary duty or relationship, then the tax attributable to the inclusion in gross income for the taxable year of that part of such amount which would have been received or accrued by the taxpayer in a prior taxable year or years but for the breach of contract, or breach of a fiduciary duty or relationship, shall not be greater than the aggregate of the increases in taxes which would have resulted had such part been included in gross income for such prior taxable year or years.

decrees, to enforce their liens as their clients had or may have for the amount due thereon to them." Ala. Code tit. 46, sec. 64 (1958).

Petitioners argue that the state of the Pennsylvania law in this regard is equivalent to that of the Alabama statute quoted above and therefore *Cotnam* is applicable here. We disagree. Pennsylvania does not have any statute similar to the Alabama statute.[5] We have not found, nor have petitioners cited to us a Pennsylvania case holding an attorney to be the owner of a portion of a judgment. Rather, the cases allow an attorney in Pennsylvania to keep only those proceeds of the judgment *which come within his possession* in an amount equal to reasonable compensation for his services. See, e.g., *Balsbaugh* v. *Frazer*, 19 Pa. 95, 99 (1852).

The instant case is further distinguishable from *Cotnam*, because Gadlow did not employ the attorneys on a contingent-fee basis as Mrs. Cotnam did, but rather, their fee was fixed solely by the number of hours they worked on Gadlow's case. Therefore, the fee was Gadlow's debt due and owing from Gadlow to his attorneys without regard to the outcome of the litigation.

Generally, a taxpayer must include the total amount of such an award in his gross income. See *Moore* v. *Commissioner*, 124 F. 2d 991 (C.A. 7, 1941), affirming on this point 42 B.T.A. 949; *Lansill* v. *Burnet*, 58 F. 2d 512 (C.A.D.C. 1932), affirming 17 B.T.A. 413; *Olcese Kramer*, 46 B.T.A. 951; *Walter Petersen*, 38 T.C. 137; and cf. *Sanford Reffett*, 39 T.C. 869. We believe that the facts here are governed by this general rule. We find the total amount of the judgment is includable in Gadlow's income in 1963.

Petitioners next argue that since the attorneys' fees herein are deductible in computing Gadlow's taxable income for 1963, *Weldon D. Smith*, 17 T.C. 135, reversed on another point 203 F. 2d 310 (C.A. 2, 1953), the amount of income to be spread back under section 1305 should be the net amount of the recovery, i.e., the award less the attorneys' fees. In the alternative, petitioners argue that the deductible attorneys' fees themselves should be spread back.

In *Walter F. O'Brien*, 38 T.C. 707, 712, affirmed per curiam 319 F. 2d 532 (C.A. 3, 1963), similar arguments were presented. There we concluded:

Petitioner is entitled to the benefit of section 1303 [6] with respect to his $16,173.05 recovery in 1957 and may deduct the $8,243.10 legal expenses in that year; such legal expenses may not be spread back over earlier years, nor may the same

---

[5] See *Laplacca* v. *Philadelphia Rapid Transit Co.*, 265 Pa. 304, 108 Atl. 612 (1919), declaring the Attorneys Lien Act of 1915 unconstitutional.

[6] Sec. 1303, prior to its amendment by Pub. L. 88–272, provided tax treatment similar to sec. 1305 for back pay included in the gross income of a taxpayer during the taxable year he received this pay. For our purposes, we believe the theory of sec. 1303 was essentially similar to that of sec. 1305.

result be achieved indirectly by subtracting the expenses from the recovery and then applying section 1303 to the reduced amount.

In *O'Brien*, we followed the rationale of *Weldon D. Smith*, 17 T.C. 135, for not allowing deductible attorney's fees to be spread back. The section in that case (sec. 107, I.R.C. 1939, essentially similar to sec. 1303, I.R.C. 1954), allowed the "spreadback of back pay," but did not make provision for spreading back related expenses incurred in the collection of back pay. We concluded that without specific statutory authority this Court could not allow this treatment. We reach the same conclusion here.

Petitioners in their final argument contend that if the income from the award is allocated to the years when it would have been received but for the breach, and if, as we have held above, the attorneys' fees are only deductible in 1963, the year paid, then Gadlow incurred a net operating loss for 1963, since his trade or business expenses exceeded his income, which included only that portion of the award allocated to that year. This loss, they assert, should then be carried back to prior years as prescribed under section 172(b)(1)(A)(i).[7]

We think petitioners have misinterpreted section 1305. That section provides only for a limitation of the income tax attributable to this award. Section 1305 does not provide that the income be considered to have been earned in the years to which it is spread back for all tax purposes. Rather the spreading back is only a method employed to compute the limitation of tax on the 1963 income here involved.[8] This seems clear from a reading of section 1305 which provides:

(a) GENERAL RULE.—If an amount representing damages is received or accrued by a taxpayer during a taxable year as a result of an award in civil action for breach of contract * * *, *then the tax attributable* to the inclusion in gross income for the taxable year of that part of such amount which would have been received or accrued by the taxpayer in a prior taxable year or years but for the breach of contract, * * * *shall* not be greater than the aggregate of the increases in taxes which would have resulted had such part been included in gross income for such prior taxable year or years. [Emphasis supplied.]

Since Gadlow's 1963 business income, which we have held includes the total amount of the judgment, exceeded his trade or business expenses, he did not incur a net operating loss in that year so as to make section 172 applicable.

*Decision will be entered for the Commissioner.*

---

[7] Sec. 172(b)(1)(A)(i). * * * a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

[8] See *Albert G. Redpath*, 19 T.C. 470, 473, which, although concerned with sec. 107(a), I.R.C. 1939, sets out principles which we think are here applicable.