T.C. Memo. 2000-180

UNITED STATES TAX COURT

NANCY J. HUKKANEN-CAMPBELL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12371-98.                      Filed June 12, 2000.

Robert J. Rayburn, III, for petitioner.

Douglas S. Polsky, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  In a notice of deficiency addressed to
petitioner, respondent determined a deficiency of $17,402 in
petitioner's Federal income tax for the year ended December 31,
1993.  The issues for our consideration are:  (1) Whether
petitioner's $150,000 judgment received in an action under the
pre-1991 title VII of the Civil Rights Act of 1964, Pub. L. 88-

352, 78 Stat. 241 (title VII), is excludable from gross income under section 104(a)(2); and (2) if the title VII proceeds are includable in income, whether petitioner is entitled to exclude from gross income that portion of the proceeds paid as attorney's fees under her contingent fee retainer agreement.

FINDINGS OF FACT[1]

The facts in this case have been fully stipulated, and the case was submitted to the Court under Rule 122.[2]  Petitioner resided in Shawnee, Kansas, at the time her petition was filed in this case.

Petitioner was employed at the International Union of Operating Engineers, Hoisting and Portable Local No. 101 (Local 101) from July 10, 1978, to October 29, 1984.  On May 23, 1990, petitioner filed a Complaint in the U.S. District Court for the Western District of Missouri, Western Division, against Local 101 and against Sam F. Long (Long), the Chief Executive Officer of Local 101 during petitioner's employment.  Petitioner's Complaint contained the allegation that, in 1984, she was constructively discharged in violation of title VII.  Petitioner sought

---

[1] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

[2] Unless otherwise indicated, Rule references are to this Court's Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the taxable year in question.

injunctive relief, backpay, front pay (the monetary equivalent of reinstatement), benefits, attorney's fees, and reasonable costs.

The District Court ruled in favor of petitioner and found that petitioner had been subjected to unwelcome sexual harassment based on petitioner's gender and that such harassment was sufficiently severe and pervasive so as to unreasonably interfere with her work performance and create an intimidating, hostile, and offensive work environment.  The District Court entered a Final Judgment on April 3, 1992, awarding petitioner $52,492 in backpay, $44,418.06 in front pay, $82,534.81 in pension benefits, $85,227.50 in attorney's fees, and $1,016.90 in reasonable costs. Local 101 and Long appealed, and petitioner cross-appealed, to the U.S. Court of Appeals for the Eighth Circuit.  The Court of Appeals upheld the backpay, front pay, and pension benefits, and remanded the attorney's fees award to the District Court for further consideration.  See Hukkanen v. International Union of Operating Engrs., Hoisting & Portable Local No. 101, 3 F.3d 281 (8th Cir. 1993).

In connection with petitioner's lawsuit, petitioner and her attorneys entered into a Contract for Employment for Litigation on a Contingency Fee Basis (contingency fee contract).  The contingency fee contract provided that petitioner's attorneys would receive 45 percent of the total recovery, including attorney's fees, or $125 per hour for all time from the beginning

of the case to completion, or the court-awarded fee, whichever figure was greater, plus any expenses that were not paid by petitioner. In no event, however, was petitioner to receive less than 25 percent of the combined award of attorney's fees and client award after deduction of expenses.

On December 21, 1993, Local 101 paid petitioner $150,000 in partial satisfaction of the title VII judgment. The payment was made jointly to petitioner and her attorneys. Ultimately, $76,600.75 was retained by petitioner, and $73,399.25, as legal fees, was retained by petitioner's attorneys.

Petitioner timely filed her Federal income tax return for the 1993 taxable year (1993 original return) and reported the entire $150,000 judgment as "Other income" and reported the $73,399.25 in attorney's fees as a miscellaneous itemized deduction. In 1995, petitioner filed an Amended U.S. Individual Income Tax Return, Form 1040X, for the 1993 taxable year, excluding the $150,000 judgment from income, thereby eliminating the need to claim the $73,399.25 in attorney's fees. As a result, petitioner reported that her corrected tax liability was $437, that she had paid $20,512, and that she was entitled to a refund of $20,075.

OPINION

Respondent determined that petitioner's 1993 gross income included the $150,000 award. Respondent also determined that

petitioner's legal fees and costs totaling $73,399.25 were deductible as a miscellaneous itemized deduction, subject to the 2-percent floor under section 67.  Respondent did not allow the miscellaneous itemized deduction for legal fees in computing petitioner's alternative minimum taxable income.  Thus, under respondent's determination, petitioner would be subject to alternative minimum tax (AMT), under sections 55 and 56, of $17,402.  Petitioner contends that the $150,000 award is excludable from income, or alternatively, if the award is not excludable, the portion of the award paid as attorney's fees is excludable from income, and petitioner is not liable for AMT.

Excludability of Title VII Judgment Proceeds

We must first decide whether petitioner's title VII judgment proceeds are excludable from gross income.  Except as otherwise provided, gross income includes income from all sources.  See sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  Although section 61(a), concerning the inclusion of income, has been broadly construed, statutory exclusions from income have been more narrowly construed.  See Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

One such statutory exclusion appears in section 104(a)(2).  Under section 104(a)(2), gross income does not include "the

amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  The regulations provide that

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Sec. 1.104-1(c), Income Tax Regs.  Thus, damages may be excluded from gross income only if petitioner shows that (1) the underlying cause of action giving rise to the recovery is based upon tort or tort type rights, and (2) the damages were received on account of personal injuries or sickness.  See Commissioner v. Schleier, supra at 336-337; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

When damages are received pursuant to a suit or settlement agreement, the nature of the underlying claim determines whether such damages are excludable under section 104(a)(2).  See United States v. Burke, 504 U.S. 229 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another ground 70 F.3d 34 (5th Cir. 1995).  Determining the nature of the claim is a factual inquiry.  See Bagley v. Commissioner, supra at 406;

Stocks v. Commissioner, 98 T.C. 1, 11 (1992).  The claim must be bona fide, but not necessarily valid.  See Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10.  The crucial question is "in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

In United States v. Burke, supra, the taxpayers brought a sex discrimination claim under title VII against their employer. The parties subsequently settled the case, and the employer withheld Federal income taxes on the settlement received by the taxpayers.  The taxpayers sought refunds of the withheld taxes on the ground that the settlement was excludable under section 104(a)(2) as "'damages received * * * on account of personal injuries or sickness.'"  Id. at 232 (quoting section 104(a)(2)).

The Supreme Court held that the nature of the claim underlying the taxpayers' settlement determined the excludability of the settlement under section 104(a)(2).  See id. at 237.  The Court noted that title VII focused on "'legal injuries of an economic character'" and limited the available remedy to backpay awards and injunctive relief.  Id. at 238-239 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)).  The Court further stated:

> Nothing in this remedial scheme purports to recompense
> a Title VII plaintiff for any of the other traditional
> harms associated with personal injury, such as pain and

suffering, emotional distress, harm to reputation, or other consequential damages * * *.

Id. at 239. Because the taxpayers' remedies under title VII were limited to wages on which they otherwise would have been taxed, the Court held that title VII's sole remedial focus was the award of back wages and did not redress a tortlike personal injury within the meaning of section 104(a)(2) and the applicable regulations. See id. at 241. As such, the settlements received by the taxpayers pursuant to their title VII claims were not excludable from gross income under section 104(a)(2).

Similar to the taxpayers in United States v. Burke, supra, petitioner brought a claim under title VII against her employer. Since the damages available to petitioner as a title VII claimant consisted only of wages,[3] which would otherwise be taxable, the $150,000 recovery received by petitioner as partial payment of her title VII judgment does not constitute "damages received * * * on account of personal injuries". Thus, under the reasoning of

---

[3] In 1991, the Civil Rights Act, Pub. L. 102-166, 105 Stat. 1071 (1991), expanded the damages available under title VII and created a right of recovery for compensatory and punitive damages for certain intentional violations of title VII. In Landgraf v. USI Film Prods., 511 U.S. 244 (1994), the Supreme Court held that the 1991 amendments to the Civil Rights Act did not apply retroactively. Because petitioner's title VII suit was filed in 1990 and the conduct underlying the suit occurred from 1981 to 1984, the application of sec. 104(a)(2) to any amounts received from petitioner's title VII claim must be considered in light of the Civil Rights Act as it existed prior to the 1991 amendments. See Clark v. Commissioner, T.C. Memo. 1997-156. In any event, there is no evidence that petitioner sought in her Complaint or was awarded damages on account of personal injury.

Burke, petitioner's title VII recovery is not excludable from gross income under section 104(a)(2).

Petitioner advances several arguments in support of her contention that the proceeds received from her title VII claim are excludable from income.  Petitioner's first argument draws upon the reasoning contained in a dissenting view expressed by Justice O'Connor in United State v. Burke, supra at 249.  That dissenting view suggests that the focus should be on the broad policy underlying title VII rather than the possible remedies available to claimants.  In the dissent, it was also pointed out that title VII actions did not "fix the character of the right" that plaintiffs were seeking to enforce.  Trying to capitalize on that reasoning, petitioner contends that, under the laws of her State, her suit was based in common-law torts (assault, battery, sexual assault, and sexual battery).  Although the form of the title VII relief was denominated as "wages", petitioner argues that, in substance, her claim was founded in tort.  We note, however, that if petitioner had an alternative cause of action under State law, she chose not to pursue it and, instead, brought her action under title VII.

In order to bolster her substance argument, petitioner cites Central Foundry Co. v. Commissioner, 49 T.C. 234, 251 (1967), and states that the tax treatment of the result of litigation should not turn upon which remedy or course of action is selected by the

taxpayer. <u>Central Foundry Co.</u> addressed whether a corporation could deduct the reimbursement of shareholders' expenses from a successful proxy fight as ordinary and necessary business expenses. The Court stated that no matter which remedy the shareholder selected, a derivative action or a proxy contest, it was the proximate relationship to the corporation and the benefit to the corporation that determined whether the expenses were deductible. <u>Central Foundry Co.</u>, however, has not been relied upon by this Court, or any other court, for guidance in determining whether recoveries by taxpayers are excludable from gross income under section 104(a)(2). Thus, we do not view <u>Central Foundry Co.</u> as persuasive support for petitioner's position that the focus should be on the legislative policy underlying title VII rather than the possible remedies available to claimants.

More important, however, is the fact that the Supreme Court did not follow the dissent's view in <u>Burke</u> and held that a claim under title VII is not based on a "tort or tort type" right, taking account of the kinds of remedies that may be awarded for that claim. <u>United States v. Burke</u>, <u>supra</u> at 234-237. Because pre-1991 title VII remedies were limited to backpay and injunctive relief, the Court held that a sex discrimination claim did not assert a "tort or tort type" right. Regardless of whether petitioner's claims may have had an analogue at common

law, the Supreme Court in <u>Burke</u> looked to the remedy that was addressed by title VII.

Petitioner also argues that <u>Burke</u> should be read narrowly to apply to cases based on economic acts that result predominately in economic harm. Petitioner contends that in cases where common law tort remedies exist, <u>Burke</u> should not apply. Petitioner, in an attempt to distinguish <u>Burke</u>, points out that the taxpayers' sole claim in that case was for damages based on economic rights, whereas petitioner had a tort claim at common law. We disagree with petitioner since the majority opinion in <u>Burke</u> did not address possibilities outside of title VII.

More importantly, petitioner's recovery here was based entirely on title VII, and no evidence was presented establishing that petitioner had any other remedies at common law. Even assuming petitioner did have other avenues of relief outside title VII, petitioner chose to file a title VII action and is now bound by the tax consequences that attach to recoveries under title VII. We hold that the proceeds from petitioner's title VII award are not excluded from gross income under section 104(a)(2).

Excludability of Attorney's Fees

The next issue for our consideration is whether petitioner is entitled to exclude from her gross income that portion of her title VII proceeds paid as attorney's fees. Petitioner argues that if section 104(a)(2) does not apply and her title VII

judgment proceeds are includable in her 1993 gross income, the $73,399.25 paid to her attorneys is excludable from her gross income because it was paid directly to her counsel under a contingent fee retainer agreement.  We note at the outset that this Court has, relying on the well-established assignment of income doctrine, uniformly rejected the contention that taxpayers may exclude the amount of their legal fees and costs from gross income.  See Kenseth v. Commissioner, 114 T.C. ___ (2000); O'Brien v. Commissioner, 38 T.C. 707, 712 (1962), affd. per curiam 319 F.2d 532 (3d Cir. 1963); Benci-Woodward v. Commissioner, T.C. Memo. 1998-395.

Petitioner relies on Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), arguing that, under the "attorney's lien" rationale, an attorney's contingent fee portion of a judgment is not included in the taxpayer's income.  In Cotnam, the taxpayer and her attorneys entered into a contingent fee agreement under which the attorneys would receive 40 percent of any amount recovered on behalf of the taxpayer on her claim.  The taxpayer received a judgment on the claim, and a check in the amount of the judgment was made payable to both her and her attorneys.  The attorneys retained their share of the proceeds and remitted the rest to the taxpayer.  In holding that the amount retained by the attorneys was not includable in the taxpayer's gross income, the Court of

Appeals for the Fifth Circuit concluded that under Alabama State law (the applicable law in <u>Cotnam</u>) the contingent fee arrangement operated to assign to the attorneys an equitable lien and interest as to 40 percent of the judgment. As stated in the provision of the Alabama Code relied upon by the Court of Appeals:

> 2. Upon suits, judgments, and decrees for money, * * * [attorneys] shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment or decree, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them.

<u>Cotnam v. Commissioner</u>, <u>supra</u> at 125 n.5 (quoting 46 Ala. Code sec. 64 (1940)).

The parties here agree that Missouri law is the applicable law in this case. Petitioner argues that the Missouri statute regarding attorney liens is similar to that of the Alabama statute quoted above, and therefore <u>Cotnam</u> is applicable here. We disagree. In the present case, the applicable Missouri statute provides as follows:

> The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come;

and cannot be affected by any settlement between the parties before or after judgment.

Mo. Ann. Stat. sec. 484.130 (West 1987). This provision stands in marked contrast to the provision of the Alabama Code relied on in Cotnam. Although both provisions give an attorney a lien to secure his or her compensation, the Missouri provision, unlike the Alabama provision, does not give attorneys the same right and power over suits, judgments, and decrees as their clients had or may have.

While we agree with petitioner that Missouri law does provide attorneys with a lien interest in their client's cause of action, we are unable to find, and petitioner fails to cite, any authority under Missouri law that transfers to the attorneys an ownership or proprietary interest in their client's cause of action. Rather, the cases that petitioner has cited only allow attorneys a lien interest, as opposed to an equity or ownership interest, in their client's cause of action. In Missouri, attorneys do not have the same substantive rights in proceeds recovered on behalf of their clients as do attorneys in Alabama. See Mills v. Metropolitan St. Ry. Co., 221 S.W. 1, 4 (Mo. 1920) ("the cause of action is the property of the client and not the attorney").

The Missouri provision granting a lien interest to secure an attorney's compensation is more akin to those attorney lien

provisions of States that have been distinguished from the attorney lien provisions of Alabama. See Baylin v. Commissioner, 43 F.3d 1451, 1455 (Fed. Cir. 1995) (holding Maryland attorney lien statute does not give attorney an ownership interest in claim of his or her client); Estate of Gadlow v. Commissioner, 50 T.C. 975, 979-980 (1968) (Pennsylvania law distinguishable from Alabama statute); Petersen v. Commissioner, 38 T.C. 137, 151-152 (1962) (holding Nebraska attorney lien statute distinguishable from Alabama attorney lien statute); Coady v. Commissioner, T.C. Memo. 1998-291 (Alaska attorney lien statute distinguishable from Alabama statute).

Petitioner next contends that Missouri law provides the same attorney lien priority as does Alabama law. In Cotnam, the court interpreted Alabama law as providing an attorney lien with a superior priority over the defendant's set-off right against the plaintiff. See Cotnam v. Commissioner, supra at 125. Petitioner relies on Hillside Enters., Inc. v. Carlisle Corp., 944 F. Supp. 793, 802 (E.D. Mo. 1996), for the proposition that Missouri case law has recognized the same superior attorney lien priority concept as stated in Cotnam. The District Court's decision in Hillside, however, was reversed by the Court of Appeals for the Eighth Circuit in Hillside Enters., Inc. v. Continental Carlisle, Inc., 147 F.3d 732 (8th Cir. 1998). In reversing, the Court of Appeals concluded that the lower court's holding regarding the

attorney lien priority was contrary to Missouri law and that, under Missouri law, an attorney's lien on the plaintiff's judgment is inferior to the defendant's right to set off its own judgment against the plaintiff.  Hillside Enters., Inc. v. Continental Carlisle, Inc., 147 F.3d at 735.  The fact that Missouri law subordinates an attorney's lien to the rights existing between the parties to the action or proceeding clearly distinguishes it from the Alabama provision cited in Cotnam where the lien of an attorney is "superior to all liens but tax liens." 46 Ala. Code sec. 64 (1940).  Based on the foregoing, we find petitioner's case distinguishable from Cotnam and hold that petitioner's gross income includes the $73,399.25 of her title VII proceeds paid to her counsel as attorney's fees.[4]

Petitioner complains that she is not subject to AMT because the attorney's fees portion of the judgment is not included in gross income.  We have held that petitioner's gross income includes the portion of her title VII proceeds paid to her counsel as attorney's fees, and therefore petitioner's argument that she is not subject to AMT is rejected.

---

[4] We would reach this same holding irrespective of the differences between the Missouri and Alabama attorney lien statutes.  See Kenseth v. Commissioner, 114 T.C. ___ (2000) (majority rejected the reasoning of Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957)).

Petitioner concedes that if the entire $150,000 award is included in her gross income, the proper treatment of the attorney's fees is as a miscellaneous itemized deduction as reported on petitioner's 1993 original return. Section 162(a) provides that there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Legal fees incurred by a taxpayer as an expense of employment are miscellaneous itemized deductions, subject to the overall limitation on itemized deductions. See secs. 67 and 68; Alexander v. Commissioner, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51; Bagley v. Commissioner, 105 T.C. at 419. Accordingly, petitioner's legal fees are deductible as a miscellaneous itemized deduction.

Petitioner does not dispute respondent's contention that the treatment of the attorney's fees as a miscellaneous itemized deduction triggers the application of the AMT under sections 55 and 56. Under section 56(b)(1)(A)(i), an individual taxpayer's deduction for miscellaneous itemized deductions is not allowed in computing alternative minimum taxable income. See Alexander v. Commissioner, supra at 946-947. Therefore, petitioner is not permitted to deduct her attorney's fees as a miscellaneous itemized deduction for purposes of computing AMT.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent.</u>